Philip A. Nicholas, WSB No. 5-1785
Nicholas & Tangeman, LLC
170 North 5th Street, P.O. Box 928
Laramie, Wyoming 82073-0928
(307) 742-7140—Phone
(307) 742-7160—Fax
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| WENDY HOOVER AND GORDON HOOVER, husband and wife, | )<br>)<br>) |
| Plaintiffs, | ) Civil Action No. _____<br>)<br>) |
| vs. | )<br>) |
| | ) **[Jury Trial Demanded]** |
| BOULDER BASIN OUTFITTERS, INC., a Wyoming corporation, and CARL SAUERWEIN, | )<br>)<br>) |
| Defendants. | )<br>) |

# COMPLAINT

1.  Plaintiffs Wendy Hoover and Gordon Hoover are husband and wife currently residing in Rhode Island and engaged in moving to the state of Ohio.

2.  Defendant Boulder Basin Outfitters, Inc., is a Wyoming corporation doing business in Park County, Wyoming.

3.  Defendant Carl Sauerwine is a resident of Cody, Park County, Wyoming.

4.  All events complained of took place in Park County, Wyoming.

5.  This action is of a civil nature involving, exclusive of interest and cost, a sum in excess of $75,000. Jurisdiction is predicated upon the diversity of citizenship of the

parties pursuant to 28 U.S.C. § 1332.

6. Venue is proper within this Court as this action arose within County of Park, State of Wyoming.

7. Leading up to the summer of 2017, Plainitiff Wendy Hoover began planning a pack trip with her family to take place in Wyoming.

8. Plainitiff had very little experience with horses and was looking for an experience suitable for a novice rider.

9. Defendants advertise different types of pack trips to non-hunting clients.

10. One type of pack trip is for horse supported summer trips with photos depicting horses crossing a rushing river surrounded by rough terrain presumably in wilderness areas.

11. A second advertised experience is described as a luxury trip with photos depicting horses crossing a lazy river, and trails through a meadow over level terrain.

12. Plaintiff Wendy Hoover purchased the easier backpacking trip based upon her experience level and interests.

13. In July of 2017, Plaintiff and several of her family members set out on a horseback trip with Defendant Boulder Basin Outfitters and guided by Defendant Carl Sauerwine.

14. Before beginning the trip, Defendant Wendy Hoover filled out a waiver advising Defendants that she was a novice rider with little horse experience.

15. The first day of the pack trip was as promised, the trails were smooth with easy terrain and slopes.

16. On July 8, 2017, the second day of the pack trip, the experience changed without opportunity for Plaintiff Wendy Hoover to decline participation.

17. Plainitiff and her party were told by Defendants that because of winter damage, the guide would be taking them on a trail which they "had not been on in a long time."

18. Defendants advised Plaintiff and her party that the planned trail had become impassable due to the winter storms, which were described as the worst in decades.

19. Defendants did not explain that the new trail would be difficult.

20. The horse provided to Plaintiff began to have difficulty on the second day keeping up with other horses.

21. Defendant Carl Sauerwine led the group staying well in front of Plaintiff and others.

22. Defendants did not position trained staff near the inexperienced riders.

23. No instruction or assistance was provided to Plaintiff on how to navigate rivers or rough terrain.

24. On the second day, Defendants led Plaintiff and her family along a difficult path littered with downed trees, steep terrain, numerous switchbacks, and rapidly flowing streams.

25. Plaintiff Wendy Hoover was frightened and well outside her level of experience.

26. Plaintiff Wendy Hoover's horse began to fall behind the riders and guide seeming to have difficulty on the harder terrain.

27. About two hours into the ride, Plaintiff Wendy Hoover's horse lost his footing and fell to his stomach in the middle of the stream.

28. Plaintiff's horse did not appear fit for the harder terrain.

29. There were no guides near Plaintiff Wendy Hoover who was then frightened and helpless to go back or stop.

30. Plaintiff Wendy Hoover has little horse experience and was unable to assess why her horse fell in the stream and why he was not keeping up.

31. Plaintiff Wendy Hoover had never ridden a horse up steep terrain or over fallen timber.

32. Plaintiff Wendy Hoover's horse approached a fallen tree crossing the trail.

33. Plaintiff Wendy Hoover did not expect to ride up steep terrain or cross dead fall timber.

34. Defendants did not warn Plaintiff Wendy Hoover that she would be expected to cross a rushing stream, ride up steep terrain or cross dead fall.

35. While crossing a tree, Plaintiff Wendy Hoover's horse lost balance and fell on top of her.

36. Wendy Hoover's horse was not fit for the trail they were riding that day.

37. Plaintiff Wendy Hoover did not agree to participate in a pack trip of the level of difficulty they encountered the second day.

38. Defendants had a duty to provide a gentle pack trip within Plaintiff's skill levels as advertised by them.

39. Defendants had a duty to exercise the appropriate degree of due care and caution for her safety as an inexperienced rider.

40. Wendy Hoover's horse fell down hill, landing on top of her with his four legs extended and pointing uphill.

41. Defendants worked with Plaintiff's brother to free Wendy Hoover from under the horse.

42. At one point, Defendants considered killing the horse while it was on top of Plaintiff, in an effort to free her.

43. Defendants were then forced to cut the saddle off the horse.

44. Using a "1,2,3 Pull" system, Defendants and Plaintiff's brother finally freed Wendy Hoover from out from under her horse.

45. Plaintiff Wendy Hoover suffered excruciating pain from the fall and process of pulling her out from underneath the horse.

46. Plaintiff suffered compound fractures requiring that she be airlifted to receive medical care.

47. Defendants were not equipped with a satellite phone or personal locator beacon.

48. Defendant Carl Sauerwine left his gun with the group and went searching for help.

49. Due to the difficult terrain, the first helicopter could not land in the area.

50. A second helicopter had to be brought in with a long rope to lift Plaintiff off the hillside where she was injured.

51. It took over 6 hours to evacuate Plaintiff for medical treatment.

52. Plaintiff suffered severe injuries from the falling horse, including multiple fractures in her left leg, a collapsed lung, and fractures of five (5) ribs.

53. Plaintiff continues to suffer permanent disability, impairment and pain from her injuries.

## FIRST CLAIM FOR RELIEF: NEGLIGENCE

54. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

55. Defendants owed a duty of reasonable care to Plaintiff Wendy Hoover to provide an easy trail ride consistent with her experience.

56. Defendants owed a duty of reasonable care to Plaintiff Wendy Hoover to avoid exposing her to risks that were atypical, uncharacteristic, not intrinsic to, and not inherent in a leisure horseback riding trip.

57. Defendants actively solicited members of the general public to participate in

gentle horseback riding trips.

58. Plaintiff Wendy Hoover paid Defendants for a gentle pack trip with a horse fit for the ride.

59. Defendants hold themselves out as experienced wranglers and guides for all levels of horseback riders.

60. Defendants knew, or should have known, that Plaintiff would rely upon the knowledge, expertise, experience, and discretion of Defendants to conduct a safe horseback riding trip consistent with her inexperience.

61. Defendants' negligent acts, omissions and breaches of duties owed to Plaintiff include the following:

    a. Failing to select an appropriate fit horse for Plaintiff;

    b. Failure to select a trail suitable for Plaintiff's experience and skills;

    c. Failing to warn Plaintiff of risks, dangers, and hazards associated with the trail and route selected by Defendants on the second day of the trip;

    d. Failure to eliminate dangers and hazards associated with the second day of the trip;

    e. Failing to select an appropriate horseback riding path for a novice rider that was familiar to the Defendants;

    f. Failing to warn Plaintiff of risks, dangers, and hazards associated with the route selected for the second day;

    g. Failing to provide staff capable of handling a medical emergency;

    h. Failure to select and provide a fit horse capable of navigating the terrain selected by Defendants;

    i. Failure to provide proper supervision and assistance to Plaintiff during the second day of travel over rough terrain;

    j. Failing to provide and maintain medical and communication equipment needed in an emergency; and

    k. Defendants' otherwise negligent conduct.

62. The risk of serious injury to Plaintiff Wendy Hoover created by Defendants' acts and omissions was reasonably foreseeable and outside the scope of inherent risks of a horseback riding trip.

63. Defendants' negligent acts were the proximate cause of Plaintiff's severe injuries and suffering.

64. As a direct and proximate result of Defendant's negligent acts and/or omissions to act, Plaintiff suffered injury and damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF: NEGLIGENT MISREPRESENTATION

65. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

66. Defendants actively solicit and invite members of the general public to participate in its horseback riding trips, supervised, and promoted by Defendants.

67. Defendants solicit and promote safe horseback for riders of all skill levels

through the internet, print, its employees and agents, and word of mouth.

68. Defendants solicit and advertise pack trips for inexperienced and for more experienced riders.

69. Defendants knew or should have known that members of the general public would rely on the information provided by Defendants in making a decision whether to participate in horseback activities provided by Defendants.

70. Defendants knew or should have known that Plaintiff would rely on the knowledge, expertise, experience, and discretion of Defendants to provide a safe experience for a novice rider.

71. Defendants knew or should have known that Plaintiff would rely on the knowledge, expertise, experience, and discretion of Defendants so select and provide fit horses suitable for a novice rider with little horse knowledge.

72. Defendants have a pecuniary interest in the horseback rides they provide.

73. Plaintiff reasonably relied upon the information provided by Defendants in making the decision whether or not to participate in the horseback riding trip.

74. Defendants made negligent representations to Plaintiff which induced her to join a pack trip for novice riders.

75. As a result of Defendant's negligent misrepresentation, Plaintiff suffered reasonably foreseeable injuries and damages in an amount to be proven at trial.

## DAMAGES COMMON TO ALL CLAIMS FOR RELIEF
## LOSS OF CONSORTIUM

76. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

77. As a direct and proximate result of Defendants' breaches described above, Plaintiff sustained severe and permanent physical injuries.

78. Plaintiffs' injuries include, but are not limited to, the following damages for which Defendant is liable:

   a. Air rescue expenses in an amount to be proven at trial;

   b. Medical expenses in an amount to be proven at trial, but which exceed the minimum jurisdictional amount of this Court;

   c. Physical therapy expenses in an amount to be proven at trial;

   d. Past and future pain, suffering, emotional distress in an amount to be proven at trial;

   e. Permanent disability and lost income;

   f. Loss of enjoyment of life in an amount to be proven at trial;

   g. Mental anguish, depression, and anxiety both in the past and reasonably anticipated in the future; and

   h. For other relief as this Court deems equitable and proper.

79. The acts, omissions, and conduct of Defendants were reckless and committed in utter disregard for the rights and interests of Plaintiff, and represent such a departure from the ordinary standard of care that they amount to willful and wanton misconduct that

punitive damages should be awarded in an amount sufficient to punish Defendant and to deter similar conduct in the future.

80. As a direct and proximate result of the willful and wanton misconduct of Defendants, Plaintiff suffered damages which are more specifically alleged above and incorporated herein by reference.

81. As a result of Wendy Hoover's serious injuries, Plaintiff Gordon Hoover has suffered and will continue to suffer the loss of companionship of his wife, the loss of society, and the loss of consortium.

82. Plaintiff Gordon Hoover is entitled to compensation for the loss of consortium he has suffered as the result of his wife Wendy Hoover's serious and permanent injuries, which were directly and proximately caused by Defendants' negligence.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs request and demand that judgment be entered in their favor and against Defendants in order to compensate for all damages incurred, in addition to allowable pre-and post- judgment interest, fees, and costs, and to any other and further relief as this Honorable Court deems just and proper in the circumstances.

## JURY DEMAND

Pursuant to F.R.C.P. Rule 38(b), plaintiffs demand a jury on all triable issues arising out of this action.

Dated: July 7, 2021.

                         /s/ Philip A. Nicholas _____
                        Philip A. Nicholas, No. 5-1785
                        Nicholas & Tangeman, LLC
                        170 North Fifth Street, P.O. Box 928
                        Laramie, WY 82073-0928
                        (307) 742-7140
                        (307) 742-7160 fax
                        nicholas@wyolegal.com
                        Attorneys for Plaintiffs